UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
IN ADMIRALTY
CASE NO:

ST LIBERTY, LLC,

    Plaintiff,

vs.

M/Y TURMOIL, a 2009 HAMPTON 72
Flybridge Motor Yacht, Official No. 1262701,
her engines, apparel, tackle, boats, appurtenances,
etc., *in rem,* MYI INTERNATIONAL, LLC.
*in personam,* LAZARO "RALPH" NAVARRO, *in personam*

    Defendants.
_____/

## VERIFIED COMPLAINT IN ADMRIALTY TO FORECLOSE PREFERRED SHIP MORTGAGE

COMES NOW, Plaintiff ST LIBERTY, LLC ("LIBERTY"), and sues Defendant M/Y TURMOIL, a 2009 HAMPTON 72 Flybridge Motor Yacht, Official No. 1262701, *in rem*, and Defendants MYI INTERNATIONAL, LLC ("MYI"), and LAZARO "RALPH" NAVARRO ("NAVARRO"), *in personam,* and would state as follows:

### PARTIES, JURISDICTION AND VENUE

1.    This case involves the foreclosure of a statutory mortgage encumbering the M/Y TURMOIL, a 2009 HAMPTON 72 Flybridge Motor Yacht, Official No. 1262701.

2.    This is an admiralty cause of action brought under the jurisdiction of this Court pursuant to Rule 9(h) of the Federal Rules of Civil Procedure.

3.    Jurisdiction is founded on 46 U.S.C. Section 31325.

1

4. Plaintiff LIBERTY is a limited liability company formed under the laws of the State of Florida.

5. Defendant MYI is the owner of the M/Y TURMOIL, and is a Florida Limited Liability Company, with a principal business address of 2550 S. Bayshore Drive, Suite 102, Miami, FL 33133.

6. Defendant NAVARRO is a guarantor and the managing member of MYI, and is believed to reside at 6301 Sunset Drive, First Floor, South Miami, FL 33143.

7. The Vessel, M/Y TURMOIL is currently located within the Southern District of Florida having been repossessed by National Liquidators on September 19, 2018. The Vessel is currently located at Lauderdale Marine Center, 2029 SW 20th Street, Fort Lauderdale, FL 33315.

## GENERAL ALLEGATIONS

8. On September 7, 2017, Defendants MYI and NAVARRO became indebted to LIBERTY in the principal sum of $505,000.00 pursuant to a Note, Disclosure and Security Agreement ("Note"). *A copy of the Note with Addendum is attached hereto as Exhibit A.*

9. The Note included scheduled interest in the amount of $93,874.14 and was due to be paid in eleven installment payments of $9,469.07, and one final balloon payment of $489,714.37 on or before September 7, 2018. *See Exhibit A.*

10. In order to secure payment of said indebtedness and interest thereon, Defendant MYI also executed and delivered to LIBERTY a First Preferred Ship Mortgage ("Mortgage") dated September 7, 2017 encumbering the M/Y TURMOIL, a 2009 HAMPTON 72 Flybridge Motor Yacht, Official No. 1262701. *A copy of the Ship*

2

*Mortgage is attached hereto as **Exhibit B.***

11. The Mortgage was duly and validly recorded with the United States Coast Guard Vessel Documentation Center on February 2, 2018 at 11:27:00 A.M. at Batch Number 50418500, Document ID 2.

12. MYI also entered into a Cross-Default and Cross-Collateral Agreement with LIBERTY, pledging a 2008 Azimut, Official Number 1251965 as cross collateral. *A copy of the Cross-Default & Cross-Collateral Authorization is attached hereto as **Exhibit C.*** Unbeknownst to Plaintiff at the time, MYI and its principal, NAVARRO, fraudulently represented that they had authority to pledge the 2008 Azimut as collateral, when in fact, MYI did not own the Vessel.

13. Defendants are in default as a result of having failed to pay the balloon payment owing on September 7, 2018 and also as a result of fraudulently representing ownership of the 2008 Azimut.

14. As a result of the default, the Note and Mortgage provide that Plaintiff may demand full payment of the indebtedness secured, and also may proceed with obtaining a judgment and foreclose upon the Vessel. *See Exhibit B, ¶20 & 21. See also, Exhibit A.*

15. As of December 7, 2018, Defendants owe the principal amount of $505,000.00, and interest in the amount of $41,864.10, for a total of $546,864.10, plus per diem interest thereafter in the amount of $345.75, exclusive of costs and attorney's fees.

16. LIBERTY is obligated to pay its attorneys' a reasonable fee for their services and is entitled to attorney's fees in accordance with the Note and Mortgage. *See Exhibit "A,", P. 4 of 8 "Collection of Expenses and Attorney's Fees,"; Exhibit B," ¶19.*

17. LIBERTY has incurred and will continue to incur certain Vessel care,

preservation, and associated costs for which the Defendants are liable, with interest thereon.

18. Actual notice of this Complaint will be given to the custodian, caretaker or master of the Vessel, and to any person, firm, or corporation with a recorded notice of claim of an undischarged lien upon the Vessel in accordance with 46 U.S.C. § 31325.

## COUNT I: FORECLOSURE OF SHIP MORTGAGE IN REM

19. Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 – 18 above.

20. Plaintiff, LIBERTY holds a valid and subsisting Ship Mortgage on the M/Y TURMOIL.

21. Defendants are in default under the terms of the Note and Mortgage referenced above where Defendants failed to make the final balloon payment due on or before September 7, 2018 and where Defendants fraudulently misrepresented they had the authority to pledge the 2008 Azimut as collateral.

22. As of December 7, 2018, Defendants owe the principal amount of $505,000.00, and interest in the amount of $41,864.10, for a total of $546,864.10, plus per diem interest thereafter in the amount of $345.75, exclusive of costs and attorney's fees.

23. Plaintiff is entitled to foreclose its statutory ship mortgage against the Vessel, and to recover all sums due and owing, including its reasonable attorney's fees, costs and expenses.

## COUNT II: CLAIM AGAINST MYI

24. Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 – 18 above.

4

25. Defendant MYI is in default under the terms of the Note and Mortgage referenced above where MYI failed to make the final balloon payment due on or before September 7, 2018 and where Defendant fraudulently misrepresented it had the authority to pledge the 2008 Azimut as collateral.

26. As of December 7, 2018, Defendants owe the principal amount of $505,000.00, and interest in the amount of $41,864.10, for a total of $546,864.10, plus per diem interest thereafter in the amount of $345.75, exclusive of costs and attorney's fees.

27. Plaintiff is entitled to a judgment for damages against MYI in the amounts referenced above, including its reasonable attorney's fees, costs and expenses.

### COUNT III: CLAIM AGAINST NAVARRO

28. Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 – 18 above.

29. Defendant NAVARRO is in default under the terms of the Note and Mortgage referenced above where NAVARRO failed to make the final balloon payment due on or before September 7, 2018 and where Defendant fraudulently misrepresented he had the authority to pledge the 2008 Azimut as collateral.

30. As of December 7, 2018, Defendants owe the principal amount of $505,000.00, and interest in the amount of $41,864.10, for a total of $546,864.10, plus per diem interest thereafter in the amount of $345.75, exclusive of costs and attorney's fees.

31. Plaintiff is entitled to a judgment for damages against NAVARRO in the amounts referenced above, including its reasonable attorney's fees, costs and expenses.

### COUNT IV- FRAUD AGAINST MYI and NAVARRO

32. This is a claim for fraud which is within this Court's supplemental jurisdiction

pursuant to 28 U.S.C. § 1967.

33. Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1- 15 above.

34. At the time of entering into the Note and Ship Mortgage referenced above, MYI entered into a Cross-Default and Cross-Collateral Agreement with LIBERTY, pledging a 2008 Azimut, Official Number 1251965 as cross collateral.

35. At the time, NAVARRO and MYI knew that they did not own and therefore did not have the authority to cross-collateralize the 2008 Azimut as further security for the loan at issue in the instant case.

36. NAVARRO and MYI misrepresented the authority to cross collateralize the 2008 Azimut with the intent to induce Plaintiff into entering into the Note and Mortgage with the stated terms.

37. Plaintiff relied upon NAVARRO and MYI's misrepresentation to its detriment. Had Plaintiff known that NAVARRO and MYI had no authority to pledge the 2008 Azimut as collateral, the loan would not have been made with the same terms. For example, there would be a higher interest rate and higher payments.

38. As a result of NAVARRO and MYI's fraud, Plaintiff has suffered damages in an amount to be proven at trial, including but not limited to entitlement to the default rate of interest from the inception of the loan.

WHEREFORE, the premises considered, Plaintiff, LIBERTY, prays as follows:

1. That all persons claiming any interest in said Vessel may be cited to appear and answer the matters aforesaid that that said Vessel may be condemned and sold to pay the demands aforesaid, with interest, costs and reasonable attorney's fees, and to pay any

other amounts to be paid to plaintiff, and that plaintiff have such other and further relief as in law and justice it may be entitled to receive;

2. That the Mortgage on said Vessel be declared to be a valid and subsisting lien against said Vessel, superior to the interest, liens or claims of any and all persons, firms or corporations whatsoever, except such persons, firms or corporations as have preferred maritime liens over said Vessel;

3. That Defendants be found in default of the payment of the sums found to be due and payable to plaintiff under the Note and Mortgage;

4. That all persons, firms and corporations claiming any interest in said vessel are forever barred and foreclosed of all right or equity of redemption or claim of, in, or to said mortgaged vessel;

5. That this Court shall direct the manner in which actual notice of the commencement of this suit shall be given by Plaintiff to the master, ranking officer or caretaker of said vessel, and to any persons, firms or corporations having interest therein;

6. That judgment be entered for Plaintiff, LIBERTY, against the Defendants, jointly and severally, for the debt evidenced by the Note and Mortgage in the principal amount of $505,000.00, and interest in the amount of $41,864.10, for a total of $546,864.10 (as of December 7, 2018), plus per diem interest thereafter in the amount of $345.75, plus costs, post judgment interest, expenses and attorney's fees.

7. That judgment be entered for Plaintiff LIBERTY against the Defendants for fraud in an amount to be proved at trial.

8. That the Vessel be condemned and sold to pay the demands aforesaid, together with all interest, costs, expenses and attorney's fees;

9. That Plaintiff, LIBERTY, be authorized to credit bid all or part of its judgment against the Vessel at any Court ordered sale of the Vessel in lieu of cash;

10. That the proceeds of the sale of the subject Vessel be disbursed and applied to pay the fees, costs, and expenses of this action and the amounts due Plaintiff, LIBERTY, herein;

11. That Plaintiff, LIBERTY, receive reasonable attorneys' fees, costs and expenses incurred in prosecuting this action, according to proof; and

12. That Plaintiff, LIBERTY, be awarded any other and further relief as this Court may deem just and proper.

Dated: December 7, 2018     Respectfully submitted,

By: *s/ Adam B. Cooke*
Robert D. McIntosh (FBN: 115490)
rdm@gunthermcintosh.com
Adam B. Cooke (FBN: 0634182)
acooke@gunthermcintosh.com
**GUNTHER McINTOSH, PLLC**
888 S.E. 3rd Avenue, Suite 201
Fort Lauderdale, Florida 33316-1159
Phone: (954) 660-9888
Fax: (954) 760-9531
Attorneys for Plaintiff

STATE OF <u>FLORIDA</u>)

)SS

COUNTY OF BROWARD__      )

**VERIFICATION**

This ____ day of December, 2018, <u>G. Robert Toney</u>, Managing Member of ST LIBERTY, LLC being duly sworn, deposes and states that:

1. I am currently the managing member of ST LIBERTY, LLC.

2. I am familiar with the allegations contained within this Verified Complaint based on my personal knowledge and my review of the business records of ST LIBERTY, LLC.

3. I have read the foregoing Verified Complaint and that the allegations contained in the Verified Complaint are true and correct to the best of my knowledge.

_____
G. Robert Toney, Managing Member
ST LIBERTY, LLC

This foregoing instrument was acknowledged before me this _____ day December, 2018 by_____, who is personally known to me and who did take an oath that the allegations contained in this Verified Complaint are true and correct to the best of his knowledge, and that he is authorized to sign the instant verification on behalf of ST LIBERTY, LLC.

_____
Notary Public, State of Florida
My Commission Expires: